IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DORAINE HOLMES, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 3:24-CV-3189-K-BW |
| | § | |
| UNITED HEALTHCARE | § | |
| INSURANCE COMPANY, et al., | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a motion to dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6) filed by Defendant UnitedHealthcare Insurance

Company ("UHIC") (Dkt. No. 42); and motions to dismiss pursuant to Rule 12(b)(6)

filed by Defendants Texas Health Harris Methodist Hospital Hurst-Euless-Bedford

("Methodist") (Dkt. No. 40), Ascension Providence Hospital of Waco ("Ascension")

(Dkt. No. 41); and Autumn Leaves Nursing Home, LCS ("Autumn Leaves") (Dkt.

No. 43).  This action was referred to the undersigned magistrate judge for pretrial

management and recommendation on claim-dispositive motions pursuant to 28

U.S.C. § 636(b) and Special Order 3-251.  (*See* Dkt. No. 6.)

Based on the relevant filings and applicable law, the undersigned recommends

that the four motions to dismiss (Dkt. Nos. 40. 41, 42, 43) be **GRANTED**.

## I. BACKGROUND

### 1. Procedural history

Plaintiffs Doraine Louise Holmes and Lisa Doraine Holmes, proceeding pro se, filed their original petition in the 193rd District Court of Dallas County, Texas on July 17, 2024, against Defendants UHIC, Methodist, Ascension, and Autumn Leaves Nursing Home, LCS ("Autumn Leaves") (collectively, "Defendants"). (*See* Dkt. No. 2-2 at ECF p. 7-11.) Plaintiffs thereafter filed an amended state court petition on August 26, 2024. (*See* Dkt. No. 2-2 at ECF p. 2, 14-36.) Plaintiffs bring their suit individually and as personal representatives of the estate of Robert Wheeler Holmes ('Mr. Holmes").[1] (*See generally id*.) Plaintiff Doraine Louise Holmes is the surviving spouse of Mr. Holmes, and Plaintiff Lisa Doraine Holmes is his daughter. (*Id*.)

The state court record indicates that a request for issuance of service was not filed until November 15, 2024 (*see* Dkt. No. 2-2 at ECF p. 1, 41-42), after which citations were issued as to each Defendant on November 18, 2024 (*id*. at ECF p. 43-50). Returns of service as to Defendants UHIC and Ascension were filed on November 21, 2024, and as to Defendant Methodist on November 22, 2024. (*Id*. at

---

[1] A person with capacity may represent an estate pro se in a survival action if the person is the only beneficiary and the estate has no creditors. *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 211 (5th Cir. 2016) (discussing Tex. Civ. Prac. & Rem. Code § 71.021(b)). In light of the recommended disposition of the present motions, the undersigned assumes such to be the case here. If, however, any claims asserted by the estate ultimately survive dismissal, the Court should reconsider whether the conditions for pro se representation of the estate are met.

ECF p. 51-60.)  Although the state court record does not include a return of service as to Defendant Autumn Leaves, it filed an answer on December 9, 2024.  (*Id.* at ECF p. 73-77.)  Defendant Methodist likewise filed an answer on December 9, 2024 (*id.* at 80-86), and Defendant UHIC filed an answer on December 13, 2025 (id. at ECF p. 89-90),

On December 19, 2024, Defendant UHIC timely removed the case pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, and Fed. R. Civ. P. 81, Federal Officer Removal Jurisdiction, because Mr. Holmes was enrolled in a Medicare Advantage plan (also called Medicare Part C) insured by UHIC, pursuant to UHIC's contracts with the Centers for Medicare and Medicaid Services ("CMS").  (*See* Dkt. No. 2 at ¶ 2; Dkt. 2-1 at ¶ 3; *see also* UHC Mot. at 2 n.1, Dkt. 42-1, Ex. A.)

Defendants UHIC, Methodist, and Ascension each filed motions to dismiss. (Dkt. Nos. 8, 9, 28.)   Plaintiffs sought leave to amend their complaint (Dkt. No. 32), which was granted on August 13, 2025 (Dkt. No. 38).  Thus, Plaintiffs' Second Amended Complaint was deemed filed as of that same date and is now the operative complaint.  (Dkt. No. 39 ("Compl.").)

Plaintiffs generally allege that Mr. Holmes received substandard medical care from health care providers Ascension, Methodist, and Autumn Leaves (*see* Compl. ¶¶ 12-57), and that UHIC's coverage determinations forced him to transfer to a less qualified facility or did not allow him to remain at certain facilities and receive requested treatment (Compl. ¶¶ 58-71).

Thereafter, Defendant Methodist filed its second motion to dismiss and brief in support on August 14, 2025 (Dkt. 40 ("Methodist Mot.")); Defendant Ascension filed its motion to dismiss on August 29, 2025 (Dkt. No. 41 ("Ascension Mot.")); and Defendant Autumn Leaves filed its motion to dismiss on September 3, 2025 (Dkt. No. 43 ("Autumn Leaves Mot."). Plaintiffs filed a combined response and brief in support to all three motions on October 23, 2025 (Dkt. No. 47 ("Combined Resp."), after which Defendant Methodist filed a reply on October 27, 2025 (Dkt. No. 49 ("Methodist Reply")), and Autumn Leaves filed a reply on November 6, 2025 (Dkt. No. 51 ("Autumn Leaves Reply")). Defendant Ascension did not file a reply, and the time to do so has passed. *See* N.D. Tex. L. Civ. R. 7.1(f) ("[A] party who has filed an opposed motion may file a reply brief within 14 days from the date a response is filed."). Accordingly, these motions to dismiss (Dkt. Nos. 40, 41, 43) are ripe for consideration.

Defendant UHIC filed its motion to dismiss Plaintiffs' second amended complaint on September 2, 2025 (Dkt. No. 42 ("UHIC Mot.").) Plaintiffs filed a response on October 23, 2025 (Dkt. No. 48 ("UHIC Resp.")); and UHIC filed a reply on November 3, 2025 (Dkt. No. 50 ("UHIC Reply").) Accordingly, UHIC's motion (Dkt. No. 42) is likewise ripe for consideration.

**2.   Factual background**

Mr. Holmes spent time at six facilities under UHIC's Medicare Part C coverage policy. (Compl. ¶ 12.) On April 25, 2022, Mr. Holmes was admitted to Ascension after suffering what was later determined to be a "severe ischemic stroke."

- 4 -

(*Id*. ¶ 13.)  Mr. Holmes was treated at Ascension from April 26, 2022, to May 6, 2022.  (*Id*. at ¶ 12.)  Plaintiffs allege that Mr. Holmes did not receive adequate treatment at the time of his admission to Ascension, and hospital staff failed to appropriately accommodate his hearing loss, failed to prevent him from falling, and failed to properly treat his injuries from the fall, which included internal bleeding and cognitive impairment.  (*Id*. ¶¶ 13-26.)  Plaintiffs further allege that, on May 6, 2022, as a result of Plaintiffs' dissatisfaction with Mr. Holmes's care at Ascension, they transferred him to UT Southwestern Hospital ("UTSW") in Dallas, Texas.  (*Id*. ¶¶ 17-20.)

Mr. Holmes remained at UTSW approximately 20 days.  (Compl. ¶ 12.)  On May 26, 2022, he was transferred to Kindred Hospital Tarrant County ("Kindred"), a long-term acute care facility, and then on June 16, 2022, was transferred to Westpark Rehabilitation and Living ("Westpark"), a facility for short term rehabilitation and long-term care.  (*Id*.)  Other than the dates, Plaintiffs do not allege any details regarding Mr. Holmes's alleged treatment or discharge from Kindred or Westpark.

Plaintiffs then allege that on June 21, 2022, Mr. Holmes arrived at the Methodist Emergency Room ("ER") where he was admitted and treated for sepsis, pneumonia, and a urinary tract infection.  (Compl. ¶¶ 12, 39.)  Plaintiffs allege that, although Methodist staff stated that Mr. Holmes was brought to the ER only for sepsis, urinary tract infection, and pneumonia, they were told by Westpark staff that he was rushed to Methodist because he was experiencing breathing problems in

reaction to breathing treatments he had received a few hours before.  (*Id.* ¶ 42.) Plaintiffs further allege that Mr. Holmes's pneumonia and sepsis dated back to his original treatment at Ascension.  (*Id.* ¶¶ 25, 26.)

Plaintiffs also allege that the Methodist staff failed to properly accommodate Mr. Holmes's hearing disability and that Dr. Soumya Yemme, one of his treating physicians "said that she had told UHIC that all insurance covered rehabilitative and/or restorative therapy should be immediately terminated."  (*Id.* ¶¶ 27-29, 34-35.) Allegedly, Dr. Yemme further informed Plaintiffs that the acute conditions for which Mr. Holmes had been admitted to the ER—sepsis, pneumonia, and a urinary tract infection—had been successfully treated, and Methodist was therefore ready to discharge him.  (*Id.* ¶¶ 39.)  Plaintiffs further allege that as a result of poor treatment or neglect while at Methodist, Mr. Holmes developed extensive bed sores and a severe dental infection.  (*Id.* ¶¶ 36-38.)

Plaintiffs further allege that on June 30, 2022, Dr. Yemme attempted to discharge Mr. Holmes, but Plaintiffs appealed to an external review board that overruled Dr. Yemme's decision and extended his stay.  (*Id.* ¶¶ 40-41.)  But then on July 16, 2022, after a second appeal was denied, Mr. Holmes was transported to Autumn Leaves.  (*Id.* ¶¶ 12, 46.)  Plaintiffs allege, in part, that as a result of substandard care received at Autumm Leaves, Mr. Holmes passed away on July 16, 2022.  (*Id.* ¶¶ 49-57.)

Throughout Mr. Holmes's treatment at various facilities, Plaintiffs allege that UHIC denied coverage from life-saving treatment, including "sufficient time to

- 6 -

become fully recovered at [UTSW] where he was improving;" "[r]elief from being transferred as a sick man from facility to facility until his death;" and "[v]ital healthcare services requires for his recovery[.]" (*Id.* ¶¶ 71.)

## II.  LEGAL STANDARDS

### A.    Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 391 (5th Cir. 2019) (quoting *Texas v. Travis Cnty.*, 910 F.3d 809, 811 (5th Cir. 2018)).  Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A motion to dismiss under Rule 12(b)(1) is the vehicle through which a party can challenge a federal court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).  When examining a factual challenge to subject matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence

of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997); *see also Clark*, 798 F.2d at 741. If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

When a motion to dismiss for lack of subject matter jurisdiction "is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (explaining that "the court should dismiss only on the jurisdictional ground . . . without reaching the question of failure to state a claim"). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Ramming*, 281 F.3d at 161. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

**B.    Rule 12(b)(6)**

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

Rule 8 requires that a civil pleading submitted to the Court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rule 8 also requires that the pleading contain "a demand for the relief sought." Fed. R. Civ. P.

8(a)(3).  Although no technical form is required, each allegation in a pleading must be simple, concise, and direct.  Fed. R. Civ. P. 8(d)(1).  In reviewing the adequacy of a pleading, the task of this Court is not to decide if the pleading party will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); s*ee also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting Fed. R. Civ. P. 10(c); citations omitted)).  And "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his] claim[s]." *Collins*, 224 F.3d at 498-99 (quotations omitted); *accord Benchmark*

- 10 -

*Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir.2003).  Attachments falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.  *See Benchmark Electronics*, 343 F.3d at 725.

It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  However, "[i]f . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pro se complaints receive a 'liberal construction.'  Even so, 'mere conclusory allegations on a critical issue are insufficient.'"  *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).  And "liberal construction does not require that the Court . . . create causes of action where there

- 11 -

are none." *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

A plaintiff may not amend her allegations through a response to a motion to dismiss, Fed. R. Civ. P. 8(a), but leave to amend must be granted freely "when justice so requires," Fed. R. Civ. P. 15(a)(2).  One reason to deny amendment is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

## III.  ANALYSIS

Plaintiffs assert claims for violation of the Texas Civil Practice and Remedies Code, Chapter 74: Medical Liability (Medical Negligence and Neglect) against all Defendants (**First and Second Causes of Action**); violation of the Americans with Disabilities Act and the Rehabilitation Act against Ascension, Methodist, and UHIC (**Third and Fourth Causes of Action**); violation of Section 1557 of the Affordable Care Act against UHIC (**Fifth Cause of Action**); violation of Chapter 121 of the Texas Human Resources Code regarding discrimination against persons with disabilities, presumably against all Defendants as Plaintiffs fail to specify to which Defendants this claim applies (**Sixth Cause of Action**); violation of Chapter 102 of the Texas Human Resources Code regarding the rights of the elderly against Ascension, Methodist, and UHIC (duplicatively labeled **Sixth Cause of Action**);

violation of the Texas Insurance Code § 544.002 regarding discrimination by an insurer based on disability against UHIC (**Seventh Cause of Action**); breach of contract against UHIC (**Eighth Cause of Action**); breach of implied covenant of good faith and fair dealing against UHIC (**Ninth Cause of Action**); wrongful death presumably against all Defendants (**Tenth Cause of Action**); and a survival cause of action pursuant Texas Civil Practice & Remedies Code Section 71.021 presumably against all Defendants (**Eleventh Cause of Action**).  (*See* Compl. ¶¶ 72-195.)

Plaintiffs seek economic, non-economic, and punitive damages against all Defendants of $1,000,000 or more; an award of post-judgment interest at the current statutory rate; reimbursement of their reasonable costs and for bringing this action, and any and all other relief the Court deems just and reasonable under the circumstances.  (*See id.* ¶ 211.)

Defendant UHIC argues that Plaintiffs' claims against it are preempted by the Medicare Act, or, alternatively, are barred by the statute of limitations, or fail to state a claim upon which relief may be granted.  (*See generally* UHIC Mot.)  Defendants Ascension, Methodist, and Autumn Leaves similarly argue that Plaintiffs' claims against them are barred by the statute of limitations.  (*See generally* Ascension Mot.; Methodist Mot.; Autumn Leaves Mot.)

## A.    Lack of Subject Matter Jurisdiction

Generally, as against UHIC, Plaintiffs allege that Mr. Holmes did not receive adequate medical care and that UHIC's determinations forced him to transfer to a less qualified facility or did not allow him to remain at certain facilities and receive

- 13 -

requested treatment.  (*See* Compl. ¶¶ 58-71; *see also id*. ¶¶ 164, 177, 187.)  Plaintiffs assert claims against UHIC for (1) medical negligence and neglect under Chapter 74 of the Texas Civil Practice and Remedies Code; (2) violations of the ADA; (3) violations of Section 504 of the Rehabilitation Act; (4) violations of Section 1557 of the ACA; (5) violations of Texas Human Resources Code sections 121.002 and 102.001; (6) violations of the Texas Insurance Code; (7) breach of contract; (8) breach of the duty of good faith and fair dealing; and (9) wrongful death.  (*See id*. ¶¶ 72-195.)

### 1.    The Medicare Act

The Medicare Act (the "Act"), 42 U.S.C. § 1395 et seq., established a federally subsidized health insurance program for elderly and disabled persons.  The Medicare Act is administered by the Secretary of the Department of Health and Human Services through CMS.  CMS delegates the administration of benefits through contracts with private insurance companies.  *See* 42 U.S.C. § 1395w-27.

The Medicare program was initially divided into two parts: Part A, which covers inpatient hospital care, and Part B, which covers services and equipment.  In 1997, Congress established the Medicare Advantage program (Part C) as "an alternative to traditional Medicare" by "giv[ing] enrollees the choice to obtain benefits through private insurance companies rather than from the government." *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 343 (5th Cir. 2024).  Those plans are offered through Medicare Advantage Organizations ("MAOs") that contract with CMS.  *See id*. "MAOs receive fixed payments from CMS based on the

number of enrollees in the company's Medicare Advantage plan." *See id*. (citing 42 U.S.C. § 1395w-23(a)(1)(A)).  Here, Mr. Holmes was covered under a Medicare Advantage Plan issued by UHIC.  (*See* Dkt. No. 42-1.)

As the organizations responsible for administering benefits, MAOs determine whether a certain treatment is covered under the Medicare regulations, and if so, the amount an enrollee must pay.  *See* 42 U.S.C. § 1395w-22(g)(1)(A).  Those "organization determinations" include an MAO's refusal to provide or pay for services that the enrollee believes should be covered.  *See Caris*, 108 F.4th at 343 (citing 42 C.F.R. § 422.566(b)(3)).

Where a Medicare enrollee complains that Medicare benefits have been denied, judicial review is available only after administrative remedies have been exhausted.  42 U.S.C. § 405(g); *Heckler v. Ringer*, 466 U.S. 602, 617-18 (1984).  The Medicare Advantage program incorporates the requirements of section 405(g), including the requirement that a claimant exhaust administrative remedies before filing suit.  *See* 42 U.S.C. § 1395w-22(g)(5); *Abira Med. Lab'ys, LLC v. Wellpoint Texas, Inc.*, No. 4:24-CV-02055, 2025 WL 2374525, at *4-6 (S.D. Tex. July 3, 2025), *adopted*, 2025 WL 2374521 (S.D. Tex. Aug. 14, 2025).  Absent exhaustion of administrative remedies, federal courts lack jurisdiction to hear complaints that Medicare benefits have been denied, and dismissal is appropriate in that circumstance.  *See, e.g.*, *Heckler*, 466 U.S. at 617-18; *Fleming v. Leavitt*, 2008 WL 174204 (5th Cir. Jan. 18, 2008) (unpublished); *Wellpoint*, 2025 WL 2374525 at *4-6.  "Congress had made clear that the Medicare Act 'shall supersede any State law or

regulation with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage Organizations] under this part.'" *Abira Med. Lab'ys, LLC v. IntegraNet Health of Fla., Inc.*, No. CV H-24-1642, 2025 WL 1797255, at *4 (S.D. Tex. June 30, 2025) (citing 42 U.S.C.A. § 1395w-26(b)(3)).

In this regard, the Medicare Act includes "a very broad, express preemption clause" applicable to MAOs. *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 195 (S.D.N.Y. 2012); *see* 42 U.S.C. § 139w-26(b)(3). CMS also affirmed this express preemption in its regulations implementing the Medicare Advantage program. *See* 42 C.F.R. § 422.402 (titled "Federal Preemption of State Law") ("The standards established under this part [implementing the Medicare Advantage Program] supersede any State law or regulation (other than state licensing laws or State laws relating to plan solvency) with respect to the MA [Medicare Advantage] plans that are offered by MA organizations.").

Accordingly, courts have found the state common law statutory claims, as well as common law doctrines, are preempted by the express preemption provision in the Medicare Act. *See, e.g.*, *Caris*, 108 F.4th at 347 (5th Cir. 2024) (holding Medicare Act preempts contract and quasi-contract claims); *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148 (9th Cir. 2010) (holding that the plaintiff's state common law fraud and statutory consumer protection claims were preempted by the Medicare express preemption provision, and contract claims were subject to administrative exhaustion requirements); *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022).

## 2.    Plaintiffs Failed to Exhaust Administrative Remedies.

UHIC argues that dismissal is warranted for lack of subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies under the Medicare Act.  (*See* UHIC Mot. at 7.)  Plaintiffs allege in their complaint that UHIC "failed to fulfill its contractual obligations by denying or obstructing access to care . . . that was covered under the policy," "denied affordable and medically necessary access for Patient to any hospital, nursing home, and home health," in breach of the Plan, and "den[ied] or delay[ed] the claim for necessary care."  (Compl. ¶¶ 164, 177, 187.)

UHIC contends that Plaintiffs' claims in this regard are claims for benefits under the Medicare Act, and therefore Plaintiffs were required to exhaust administrative remedies before filing suit, which they did not do.  (*See* UHIC Mot. at 8 (citing *Heckler*, 466 U.S. at 617-18).)  Accordingly, argues UHIC, this Court lacks jurisdiction over Plaintiffs' claims against UHIC, and those claims should be dismissed.  (*See* UHIC Mot. at 8 (citing *Wellpoint*, 2025 WL 2374525 at *4-6).)

Plaintiffs concede in their response that they failed to exhaust their administrative exhaustion requirements, but they argue that: (1) they are not asserting a claim for contract benefits, because "Plaintiffs never filed formal claims," but rather, their claims "are pure state-law tort claims" (UHIC Resp. at 9; *see also id*. at 11, 22, 28), and (2) exhaustion of administrative remedies was either futile or impractical (*see id*. at 12).  Plaintiffs' arguments are unavailing, and the undersigned agrees that Plaintiffs' claims should be dismissed for lack of jurisdiction because they failed to exhaust their administrative remedies.

First, as discussed further below, the Medicare Act preempts state law tort claims, including claims for wrongful death, negligence, professional negligence, and medical malpractice. Second, Plaintiffs cannot show that their administrative remedies would have been futile, and length of time is not a basis to disregard Medicare's exhaustion requirement. *Heckler*, 466 U.S. at 619. The administrative remedies provided by the Medicare Act include review by an administrative law judge, *see id.*, and Plaintiffs have not argued, much less shown, that such a review would be futile. Their argument fails for this reason alone. In addition, the exhaustion requirements apply even if a plaintiff has not yet undergone treatment and seeks a ruling that future treatment will be covered. *Id.* In *Heckler*, the plaintiff argued that he had not yet had the treatment at issue in the suit and therefore had no claim subject to the Medicare Act's exhaustion requirements. *Id.* The Supreme Court rejected this argument and held that a plaintiff must obtain treatment and exhaust his administrative remedies before seeking judicial review. *Id.* Plaintiffs concede they have not done so, and their claims must be dismissed for this reason as well. Likewise, the lengthy administrative review process is not a basis to ignore the Medicare Act's exhaustion requirements. *Id.* (noting that while an "immediate appeal to the District Court" would be much quicker than "the often lengthy administrative review process," exhaustion of administrative remedies was a prerequisite to seeking review in federal court).

Furthermore, the cases Plaintiffs cite in support of their argument—*Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 6 (2000), *Est. of Lokken v.*

*UnitedHealth Grp., Inc.*, 766 F. Supp. 3d 835, 840 (D. Minn. 2025), and *Moreno v. Health Partners Health Plan*, 4 F. Supp. 2d 888 (D. Ariz. 1998)—do not compel a different conclusion.  (*See* UHIC Resp. at 7, 9.)  Contrary to Plaintiffs' assertion, the opinion in *Shalala* is clear that claims like Plaintiffs are preempted by the Medicare Act.  *Shalala*, 529 U.S. at 13-14.  *Moreno* is a case arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), discussing a motion to remand, and does not discuss the Medicare Act; it therefore has no application here.  *Moreno*, 4 F. Supp. 2d at 888-93.  Finally, in *Lokken*, the court allowed breach of contract and breach of implied covenant of good faith and fair dealing claims related only to the health plan's alleged use of an artificial intelligence program to deny claims.  *Lokken*, 766 F. Supp. 3d at 848-49.  The court allowed these misrepresentation claims to proceed because "in analyzing these claims the Court would only be required to investigate whether UnitedHealth Group complied with its own written documents," not whether it complied with Medicare standards.  *See id*.

Contrary to Plaintiffs' contentions, whether a Medicare Advantage enrollee is entitled to benefits is determined by the Medicare Act, *see* 42 USC 1395w-23(a)(1)(A); *Caris*, 108 F.4th at 343-44, and Plaintiffs' claims in this regard are claims for benefits under the Medicare Act, and therefore Plaintiffs were required to exhaust administrative remedies before filing suit.  *Heckler*, 466 U.S. at 617-18; *see also Uhm*, 620 F.3d at 1148 (holding that plaintiff's state common law fraud and statutory consumer protection claims were subject to administrative exhaustion requirements).

**3.** **Plaintiffs' State Law Claims Against UHIC are Preempted by the Medicare Act.**

UHIC next argues that this Court lacks subject matter jurisdiction because Plaintiffs' claims are preempted by the Medicare Act.  (*See* UHIC Mot. at 9-11.)  Similar to their argument regarding exhaustion, Plaintiffs argue that the Medicare Act does not preempt their claims, because Plaintiffs were precluded by UHIC from initiating the administrative claims process.  (UHIC Resp. at 8-9.)  Plaintiffs further argue that Medicare preemption is limited to coverage determinations, "not tort claims for medical negligence leading to wrongful death."  Plaintiffs' arguments fail in this regard as well.

As noted previously, the Medicare Act preempts state law tort claims, including claims for wrongful death, negligence, professional negligence, and medical malpractice.  *See Rumage v. Bergman*, No. 07-CA-135-WWJ, 2008 WL 11417135, at *2 (W.D. Tex. Jan. 16, 2008) (dismissing state law tort claims against Medicare Advantage plan based on alleged failure to provide proper treatment to insured, resulting in his death); *see also Uhm*, 620 F.3d at 1148 (holding the plaintiff's state common law fraud and statutory consumer protection claims were preempted by the Medicare express preemption provision, and contract claims were subject to administrative exhaustion requirements); *Quishenberry v. UnitedHealthcare, Inc.*, 14 Cal. 5th 1057, 1063, 1070-71 (Cal. 2023) (claims asserted against a health plan for elder abuse, negligence, and wrongful death based on premature discharge from a skilled nursing facility were preempted by the Medicare Act).

Although the Fifth Circuit has not expressly ruled on preemption as it relates to an enrollee bringing claims under a Medicare Advantage plan, *see Caris*, 108 F.4th 340, the undersigned finds persuasive the Ninth Circuit's analysis in *Uhm*, 620 F.3d 1134, and *Aylward*, 35 F.4th 673, to support a finding that the preemption provision applies where, as here, state law "parallels, enforces, or supplements express standards established under Part C[.]" *Aylward*, 35 F.4th at 680–81. "[I]n order to determine whether a claim is preempted, we must identify whether there is a relevant standard established under Part C with preemptive effect." *Id.* at 680 (cleaned up). The *Aylward* court further explained that "Part C's preemption provision applies to state law causes of action based on generally applicable laws and that conflict between the state law and the federal standard is unnecessary." *Id.* at 681 (cleaned up). Thus, "preemption analysis must be based on the relevant state law duty sought to be imposed under the generally applicable law invoked by the plaintiff." *Id.*

Construing Plaintiffs' complaint liberally, as the Court must do, all of Plaintiffs' allegations against UHIC arise from the denial of benefits and coverage determinations under Mr. Holmes's Medicare Advantage plan. (*See, e.g.*, Compl. ¶¶ 71, 143, 159, 177) (listing medical services and coverage benefits that Plaintiffs allege Mr. Holmes was entitled to receive but UHIC denied).) Whether a Medicare Advantage enrollee is entitled to benefits is determined by the Medicare Act. 42 U.S.C. § 1395w-23(a)(1)(A). Because the statute contains a direct provision controlling the entitlement of benefits, Plaintiffs' claims are expressly preempted by

- 21 -

the Medicare Act. Accordingly, this Court lacks jurisdiction, and those claims should be dismissed. *Wellpoint*, 2025 WL 2374525 at *4-6.

For all the reasons explained above, Plaintiffs' allegations do not invalidate the applicability of the Medicare Act's administration exhaustion and preemption requirements, which deprive this Court of jurisdiction over Plaintiffs' claims against UHIC under the Medicare Advantage Plan issued to Mr. Holmes. Therefore, these claims should be dismissed for lack of jurisdiction.

## B.    Failure to State a Claim

Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate "when the complaint affirmatively shows that the claims are time-barred." *Delhomme v. Caremark Rx, Inc.*, 232 F.R.D. 573, 579 (N.D. Tex. 2005), *see also Ponce v. Donyor Madaminov & TJ Transportation LLC*, No. 1:23-CV-00964-DII, 2024 WL 314050, at *2 (W.D. Tex. Jan. 26, 2024) ("[A] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." (internal quotations omitted)). A claim is time-barred and subject to dismissal under Rule 12(b)(6) where the claim was clearly filed after the applicable statute of limitations had run and it was evident from the pleadings that the plaintiff was not entitled to the benefit of the discovery rule. *Kansa Reinsurance Co. v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1366-70 (5th Cir. 1994).

### 1.    Texas Civil Practice and Remedies Code's Statute of Limitations

Plaintiffs' negligence and malpractice claims are governed by the Texas Medical Liability Act's ("TMLA") two-year statute of limitations.  Tex. Civ. Prac. & Rem. Code §§ 74.001(a)(13); 74.251; *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001).  Pursuant to Section 74.001(a)(13) of the Texas Civil Practice and Remedies Code, a "health care liability claim" means:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13).  Under the allegations in the complaint, Plaintiffs' claims against Defendants Ascension, Methodist, and Autumn Leaves constitute a "health care liability claim" as statutorily defined.  *See id.*

The statute of limitations for all such claims, including medical malpractice claims and claims for wrongful death, is two years.  Tex. Civ. Prac. & Rem. Code § 74.251 (medical malpractice); Tex. Civ. Prac. & Rem. Code § 16.003 (wrongful death); *Maypole v. Acadian Ambulance Serv., Inc.*, 647 S.W.3d 533, 539 (Tex. App.—Dallas 2022, pet. granted) (holding limitations begins to run on a medical malpractice claim from the occurrence of the tort, or the last day of the relevant course of treatment or hospitalization); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 354 (Tex. 1990) (holding cause of action for wrongful death accrues on date of death and is two years).

The statute of limitations is tolled for 75 days, however, when timely and proper pre-suit notice of a health care liability claim is given.  In an effort to "encourage parties to negotiate and settle disputes prior to suit," *Hebner v. Reddy*, 498 S.W.3d 37, 42 (Tex. 2016) (emphasis in original) (quoting *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 189 (Tex. 2012)), Texas law "requires anyone asserting a claim under the [TMLA] to provide written notice by certified mail to 'each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit.'"  *Id*. (quoting Tex. Civ. Prac. & Rem. Code § 74.051(a)).  "Providing notice of a health care liability claim will toll the statute of limitations for seventy-five days, if the notice is 'given as provided' in [the TMLA]." *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 69 (Tex. 2011) (quoting Tex. Civ. Prac. & Rem. Code § 74.051(c)).

But "[f]or a claim's notice and authorization form to toll limitations for 75 days under Section 74.051(c), they must be sent at least 60 days before filing suit and within the normal limitations period." *Flanigan v. Nekkalapu*, 613 S.W.3d 361, 364 (Tex. App. 2020, no pet.).  And "[t]he notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052." Tex. Civ. Prac. & Rem. Code Ann. § 74.051(a) (West 2003). Section 74.052 provides an authorization form that is to be completed by a claimant; the law dictates that "[t]he medical authorization required by this section shall be in the following form[.]"  Tex. Civ. Prac. & Rem. Code Ann. § 74.052(c) (West 2003).

- 24 -

**2.    Plaintiffs filed their TMLA claims beyond the applicable statute of limitations.**

All four Defendants argue that Plaintiffs' TMLA claims are barred by limitations.  (*See generally* UHIC Mot., Ascension Mot., Methodist Mot., Autumn Leaves Mot.)  Because Mr. Holmes died on July 16, 2022 (Compl. ¶ 12), Plaintiffs' claims against any Defendant accrued at the very latest on July 16, 2024.  Plaintiffs filed their lawsuit on July 17, 2024.  (*See* Dkt. No. 2-2.)

May 6, 2022 was the last date on which Ascension provided any medical or health care treatment to Mr. Holmes.  (Compl. ¶ 12). Thus, for Plaintiffs' claims to be timely as to Ascension, they had to file suit no later than May 6, 2024.  Mr. Holmes was hospitalized at Methodist from June 21, 2022, through July 15, 2022 (*see id*. ¶¶ 12, 27-43)—which means that the applicable two-year statute of limitations as to Methodist ended on July 15, 2024, at the latest.  Finally, with respect to Autumn Leaves, Plaintiffs state that Mr. Holmes was admitted to Autumn Leaves on July 15, 2022, and passed away at the facility on July 16, 2022.  (*See id*. ¶¶ 12, 43, 72-73; 98-112; 115-122; 129; 191-195.)  Because Plaintiffs filed their suit on July 17, 2024, their claims against Autumn Leaves were asserted more than two years after they accrued and are therefore time-barred.

Accordingly, Plaintiffs' TMLA claims against health care providers Ascension, Methodist, and Autumn Leaves are barred by the statute of limitations. *Maypole*, 647 S.W.3d at 539; *Moreno*, 787 S.W.2d at 354.  For the same reasons, Plaintiffs' TMLA claims against UHIC, are also barred by limitations.  Furthermore,

no tolling of the statute of limitations is applicable here as no notice letter was provided in advance of the lawsuit being filed in satisfaction of Section 74.051 of the Texas Civil Practice and Remedies Code.  *See id*. at § 74.051.

Plaintiffs' response does not dispute that their claims are subject to a two-year statute of limitations or that their original petition was filed one day after the expiration of limitations.  (*See generally* Combined Resp.)  Instead, Plaintiffs contend that equitable tolling should apply due to unforeseeable and unexplainable technical "glitches," and their wrongful death claim runs from date of death not the last date of treatment.  (*See generally id*. at 11-12).  Despite Plaintiffs' contentions, none of these reasons operate to preclude dismissal based on the statute of limitations.

Regarding Plaintiffs' contention that, pursuant to Tex. Civ. Prac. & Rem. Code § 71.001 *et seq*., their wrongful death claim runs from the date of death and not the last date of treatment (*see* Dkt. No. 47 at 11), this argument is incorrect.  While Plaintiffs attempt to recast their lawsuit as a wrongful death claim as opposed to a health care liability claim to avoid the appliable statute of limitations, Chapter 74 of the Texas Civil Practice and Remedies Code controls in the extent of any conflict with any other law.  *See* Tex. Civ. Prac. & Rem. Code § 74.002(a).  Because the gravamen of Plaintiffs' causes of action against Ascension, Methodist, and Autumn Leaves is a health care liability claim, these allegations cannot be reframed as any other state law claim to avoid the two-year statute of limitations applicable to malpractice claims.  *Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010); *Pitts v. Rivas*, 709 S.W.3d 517, 527 (Tex. 2025).

Plaintiffs also contend that equitable tolling should apply.  (*See* Combined Resp. at 11.)  Plaintiffs assert that they "submitted the pleading before the midnight deadline, but the system's delay caused the timestamp to register three minutes late." (*See id*. at 14.)  Notably, Plaintiffs' allegations in this regard are a deviation from their previous representations that they attempted to file the original petition at 11:30 p.m., but technical details prevented timely filing.  (*See* Dkt. No. 18 at 20-21.) However the delay occurred, Plaintiffs offer no authority that their allegations can alter the date of filing, and it is well-established that a lawsuit filed even one day after the expiration of limitations is time-barred.  *See, e.g.*, *Homer v. Eighty Seventh Apartments*, No. 11-22-00283-CV, 2024 WL 4457040, at \*2 (Tex. App.—Eastland Oct. 10, 2024) (holding that, where plaintiff was insured on March 30, 2022, and filed suit on March 31, 2024, her claims were barred by the two-year statute of limitations); *Alusi v. City of Frisco*, Tex., No. 4:22-CV-397-SDJ, 2023 WL 5509307, at \*7 (E.D. Tex. Aug. 24, 2023) (holding plaintiff's claim barred by two-year statute of limitations where it accrued on May 6, 2020, but suit was not filed until May 7, 2022); *see also Apache Corp. v. Apollo Exploration, LLC*, 670 S.W.3d 319, 331-332 (Tex. 2023) (holding that a two-year period expires on the second anniversary of the initial date from which the period is measured).  As demonstrated by the foregoing authorities, the limitations period is strictly enforced even when the lawsuit is filed one day late.

Furthermore, UHIC avers that Plaintiffs took no steps to serve UHIC when they filed suit on July 17, 2024, or on August 26, 2024, when they filed their First

Amended Petition. (Dkt. No. 2-2 at ECF p. 14.) It was not until November 15, 2024, approximately four months after limitations expired, that Plaintiffs requested citation and service. (*See id*. at ECF p. 41.) Ultimately, Plaintiffs did not serve UHIC until November 19, 2024, more than four months after limitations expired. (*See id*. at ECF p. 53.) In prior briefing, Plaintiffs admit that they failed to serve UHIC, or request service, because (1) they were waiting for additional medical records, (2) they were not familiar with how to have process served, (3) they lacked funds to serve process sooner, and (4) they suffered from a litany of medical and personal difficulties and delayed service of process. (*See* Dkt. No. 18 at 21-22.) While Plaintiffs' situation may warrant sympathy, these are not the type of excuses that show diligence in the service of process, nor can they justify overlooking the legal effect of limitations.

"[T]o 'bring suit' within the two-year limitations period . . . a plaintiff must not only file suit within the applicable limitations period, but also use diligence to have the defendant served with process." *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). Here, Plaintiffs admit that they chose to delay service from July 17, 2024, when they filed the lawsuit, until August 13, 2024, when they asked the Secretary of State for a list of registered agents. (Dkt. No. 18 at 18-19.) This intentional delay establishes a lack of diligence by Plaintiffs and bars their claims as a matter of law. *Montes v. Villarreal*, 281 S.W.3d 552, 557–58 (Tex. App.—El Paso 2008, pet. denied); *Broom v. MacMaster*, 992 S.W.2d 659, 665 (Tex. App.—Dallas 1999, no pet.).

In *Montes*, the plaintiff's counsel delayed service after limitations expired for various tactical reasons, including a desire to avoid federal court. *Montes*, 281 S.W.3d at 558. Likewise, in *Broom*, the plaintiff delayed service on a hospital because counsel was not certain whether the hospital was a proper party. *Broom*, 992 S.W.2d at 665. In both cases, the courts held that the claims were barred by limitations because the plaintiff admitted a lack of diligence in serving the defendant. *Montes*, 281 S.W.3d at 558; *Broom*, 992 S.W.2d at 665. It follows here that Plaintiffs cannot withstand the effect of limitations in light of their lack of diligence. As the court explained in *Montes*:

> [W]hile a plaintiff may have good reasons for not wanting to seek immediate service on a defendant, those reasons do not negate the requirement that diligence be used in attempting service once the limitations period has passed. If the limitations period has expired, a plaintiff must use due diligence to procure service regardless of reasons he may have not to want to do so. "To hold otherwise would ignore the goal of statutes of limitations to inform defendants in a timely fashion of claims against them and would eviscerate the long-established due diligence requirement."

*Id*. (internal citations omitted, quoting *Broom*, 992 S.W.2d at 665). Here, Plaintiffs' admission that they delayed service to gather additional information to file an amended petition establishes lack of diligence and bars their claims. *Montes*, 281 S.W.3d at 558; *Broom*, 992 S.W.2d at 665.

Moreover, Plaintiffs' additional excuses are insufficient to establish diligence. Illness is generally not an excuse for delays in service. *Hamilton v. Tex. CES, Inc.*, No. 02-10-00142-CV, 2011 WL 1435238, at *1 (Tex. App.—Fort Worth Apr. 14, 2011, no pet.) (holding claim barred by limitations, where service was delayed because of

illness and frequent hospitalizations of Sheriff's Deputy tasked to serve plaintiff). Likewise, the press of other business is not an excuse for delay in service. *See Burke v. Home Depot Store #6828*, No. 4:16-CV-03620, 2018 WL 2321956, at *7 (S.D. Tex. Jan. 31, 2018) (holding attorney's affidavit explaining that he was preoccupied with work on other matters and that his office had a high turnover in support staff did not establish diligence and claims were barred by limitations).  The Court did not find, and Plaintiffs do not cite, a case discussing lack of funds as an excuse for non-service, but if such an excuse was accepted, the statute of limitations would be largely ineffectual in many cases. *See, e.g.*, *Broom*, 992 S.W.2d at 665.  Even if Plaintiffs' newly formulated narrative regarding the date of filing is accepted, Plaintiffs have not shown diligence, and their claims are barred by limitations.

> **3.      Plaintiffs' Claims under the ADA, the Rehabilitation Act, the Texas Insurance Code, the ACA, and their common law claims for breach of the duty of good faith and fair dealing are likewise barred by limitations.**

Although some of these causes of action are not clearly articulated as to any particular Defendant, Plaintiffs appear to allege that some or all of the Defendants discriminated against Mr. Holmes on the basis of disability, in violation the ADA, the Rehabilitation Act, the Texas Insurance Code, and Section 1557 of the ACA. (*See* Compl. ¶¶ 34, 54, 62. 66. 83, 120, 135, 137, 145, 151, 154, 156-57, 160.)

The statute of limitations for a claim under the ADA, the Rehabilitation Act, the Texas Insurance Code, and for breach of the duty of good faith and fair dealing is two years. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)

(insurance code and breach of the duty of good faith and fair dealing); *Bays v. New Braunfels Police Dep't*, No. SA-23-CV-01566-OLG, 2025 WL 826536, at *7 (W.D. Tex. Feb. 3, 2025), *adopted*, 2025 WL 824145 (W.D. Tex. Mar. 12, 2025) (ADA); *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 982 (5th Cir. 1992) (Rehabilitation Act).  In addition, since section 1557 of the ACA simply incorporates the ADA, it also has a two-year statute of limitations.  *See, e.g.*, *Joganik v. E. Tex. Med. Ctr.*, No. 6:19-CV-517-JCB-KNM, 2021 WL 6694455, at *6 (E.D. Tex. Dec. 14, 2021) (explaining function of Section 1557), *adopted*, 2022 WL 243886 (E.D. Tex. Jan. 25, 2022) Accordingly, all these claims are barred by limitations and should be dismissed.

### 4. Plaintiffs' remaining claims fail to state a claim against any Defendant.

#### a. Plaintiffs have not stated a claim for medical negligence against UHIC.

In addition to Medicare preemption and claims otherwise barred by the statute of limitations, Plaintiffs have failed to state a claim against UHIC for medical negligence.  To state a claim for medical negligence, the plaintiff must allege the following elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) the applicable standard of care and its breach; (3) resulting injury; and (4) a reasonably close causal connection between the alleged breach of the standard of care and the alleged injury.  *Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 919 (Tex. App.—Houston [14th Dist.] 2003, no pet.).  The duty to treat a patient with professional care results from the consensual relationship between the

- 31 -

patient and the physician; only when that relationship exists can there be a breach of a duty to provide professional medical care. *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex.1995). The duty owed by a physician to a patient is a question of law. *Id.*

A health insurer such as UHIC does not have a physician-patient relationship with its insured and therefore cannot be liable for medical malpractice. *See Dubose*, 117 S.W.3d at 919 (holding no medical malpractice claim could arise in the absence of a physician-patient relationship); *Almaguer v. Jenkins*, 9 S.W.3d 835, 838 (Tex. App.—San Antonio 1999, no pet.) (dismissing claims for malpractice, negligence, and gross negligence where a doctor conducted an examination solely for the purpose of evaluating the plaintiff's disability for an insurance carrier and there was no treating relationship); *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d 705, 710 (Tex. Civ. App.—Dallas 1963, writ ref'd n.r.e). Here, Plaintiffs have not alleged that UHIC provided medical care to Mr. Holmes, and they cannot do so because UHIC is not a medical provider. For this reason, Plaintiffs' "breach of medical professionalism" claim against UHIC should be dismissed.

> **b.    Plaintiffs have not stated a claim for violations of the Texas Human Resources Code against UHIC.**

Plaintiffs' claims under Sections 102.001 and 121.002 of the Texas Human Resources Code also fail to state a claim. First, neither statute states that claims arising under the statute survive or are assignable. *See generally* Tex. Hum. Res. Code Chapters 102 and 121. "The general rule, unless the statute has a contrary provision, is that statutory claims, either penal, or distinctly personal to certain individuals, will

not survive to the heirs or representatives of a decedent, and so are not assignable." *Strickland v. Sellers*, 78 F. Supp. 274, 276 (N.D. Tex. 1948). Further, the Texas Supreme Court has held that similar claims under the Texas Deceptive Trade Practices Act, involving "personal litigation" and damages of a "punitive nature," do not survive the death of the injured party and are not assignable. *PPG Indust., Inc. v. JMB/Houston Centers Partners Ltd. Partnership*, 146 S.W.3d 79, 90 (Tex. 2004). Here, the detailed notice provision in Chapter 102 and the presumed damages in Chapter 121 raise the same issues as the DTPA claims in *PPG Industries*. No Texas court has ever held that claims of the type asserted by Plaintiffs survive the death of the injured party, and the undersigned concludes that they do not. *See, e.g.*, *Lee v. Rogers Agency*, 517 S.W.3d 137, 146 (Tex. App. 2016) (finding that similar claims under the Texas Insurance Code are not assignable for the same reasons discussed in *PPG Industries*) (citing *Great Am. Ins. Co. v. Fed. Ins. Co.*, Civ. No. 3:04–CV–2267–H, 2006 WL 2263312, at *10 (N.D. Tex. 2006); *Launius v. Allstate Ins. Co.*, Civ. No. 3:06–CV–0579–B, 2007 WL 1135347, at *6 (N.D. Tex. 2007); *Am. S. Ins. Co. v. Buckley*, 748 F.Supp.2d 610, 626 (E.D. Tex. 2010)) (internal citations and quotations omitted).

Second, Plaintiffs have failed to allege facts sufficient to state claims under the Human Resources Code. To state a claim under Chapter 121, Plaintiffs must allege a refusal to admit a disabled person to a common carrier or public facility. *See* Tex. Hum. Res. § 121.003; *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 60 (Tex. 2019). Likewise, Chapter 102 only applies to an entity "providing convalescent and nursing

- 33 -

home services, home health services, or alternate care services." Tex. Hum. Res. § 102.001. Plaintiffs allege that UHIC refused to pay for certain treatment, but do not allege that UHIC denied Plaintiffs access to a public facility or that UHIC is itself a provider of the type described in Chapter 102. Absent such allegations, these claims fail against UHIC. *See Rupe v. City of Jacksboro, Texas*, No. 4:23-CV-998-P, 2024 WL 3559777, at *3 (N.D. Tex. May 1, 2024), *adopted*, 2024 WL 3535119 (N.D. Tex. July 25, 2024) (dismissing claims under Chapter 102, because defendant did not provide the required services).

> ### c. Plaintiffs have not stated a claim under the ADA and the ACA against UHIC or any other Defendant.

As previously noted, Plaintiffs' ADA and ACA claims are not clearly directed to any particular Defendant. (*See* Compl. ¶¶ 62, 66. 83, 135, 137, 151, 160.) However, neither of these statutes provide private causes of action for individuals to seek relief for any emotional distress they experience from discrimination against their family members. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 586 U.S. 212, 222 (2022) (explaining that emotional distress damages are not recoverable in private actions to enforce the antidiscrimination provisions in the ACA); *Luke v. Lee Cnty.*, No. 1:20-CV-00388-DII, 2023 WL 4980943, at *9 (W.D. Tex. Aug. 3, 2023), *adopted*, 2023 WL 6141594 (W.D. Tex. Sep. 20, 2023) (applying the holding in *Cummings* to the ADA). Accordingly, Plaintiffs' claims under the ADA and the ACA should be dismissed for this additional reason.

## C.   Leave to Amend

The Fifth Circuit advises courts to give pro se plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. CIV.A.3:00CV0863D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). District courts therefore typically allow pro se plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. CIV.A.3:96-CV-2923-D, 2004 WL 789870, at *1 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

The Court may deny leave to amend only when "there is substantial reason to deny leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Factors to consider when deciding whether to grant leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id.* at 598. Granting leave to amend is futile when the amended complaint would fail to state a claim upon which relief could be granted. *See, e.g.*, *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Such is the case here.

For the reasons explained above, Plaintiffs' claims related to the Medicare Act lack subject matter jurisdiction and their remaining claims are barred by limitations or failure to state a claim. Because these deficiencies cannot be cured, allowing Plaintiffs to amend their claims would be futile.

## V.  RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Defendant UnitedHealthcare Insurance Company's motion to dismiss (Dkt. No. 42) be **GRANTED**, as follows:

1.      Plaintiffs' claims against UnitedHealthcare Insurance Company related to coverage under a Medicare Advantage plan should be **DISMISSED WITHOUT PREJUDICE**, pursuant to Federal Rule of Civil Procedure 12(b)(1), for failure to exhaust administrative remedies and because those claims are preempted by the Medicare Act.

2.      All other claims against UnitedHealthcare Insurance Company should be **DISMISSED WITH PREJUDICE**, pursuant to Rule 12(b)6), for failure to timely file claims under the applicable statutes of limitations, and for failure to state a claim.

It is further **RECOMMENDED** that Defendant Texas Health Harris Methodist Hospital Hurst-Euless-Bedford's motion to dismiss (Dkt. No. 40), Defendant Ascension Providence Hospital of Waco's motion to dismiss (Dkt. No. 41); and Defendant Autumn Leaves Nursing Home, LCS's motion to dismiss (Dkt. No. 43) should be **GRANTED**, and all of Plaintiffs' claims as to these Defendants should be **DISMISSED WITH PREJUDICE**, pursuant to Rule 12(b)(6), for failure to timely file claims under the applicable statutes of limitations, and for failure to state a claim.

**SO RECOMMENDED** on December 15, 2025.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

- 37 -